117 N.J. Super. 541 (1971)
285 A.2d 252
JOYCE BUCHANAN, JESSIE RAMSEUR, NANCY FULLER, ELIZABETH WILLIAMS, VIVIAN SIMMONS, BEATRICE GREEN, ETHEL BANKS AND MARION KIDD, ALL INDIVIDUALLY, ON BEHALF OF THEIR MINOR CHILDREN, AND ON BEHALF OF ALL SIMILARLY SITUATED PERSONS, PLAINTIFFS-RESPONDENTS,
v.
ESSEX COUNTY WELFARE BOARD AND PHILIP K. LAZARO, DIRECTOR OF THE ESSEX COUNTY WELFARE DEPARTMENT, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued October 19, 1971.
Decided December 28, 1971.
*543 Before Judges KILKENNY, LABRECQUE and LANE.
Mr. Ronald Reichstein argued the cause for defendants-appellants (Mr. Joseph E. Cohen, attorney).
Mr. Michael C. Parks, on behalf of the Newark-Essex Joint Law Reform Project, argued the cause for plaintiffs-respondents.
The opinion of the court was delivered by LABRECQUE, J.A.D.
Defendants Essex County Welfare Board (Board) and Philip K. Lazaro, its Director, appeal from a judgment of the Law Division, dated March 19, 1971, which held that recipients of assistance from the Board under the Aid to Families with Dependent Children (AFDC) program who were also obligees under court orders for support were entitled to be offered the opportunity to be placed on a full-payment basis whenever the court-ordered support payments were delinquent by five business days in a single payment period.
The facts with which we are concerned are set forth in the reported opinion of the Law Division, 113 N.J. Super. 99, and need not be repeated in detail. Briefly summarized, the Board is a county agency charged with responsibility for the administration of financial assistance and other services *544 to needy dependent children and their parents or relatives under the federally funded AFDC program. N.J.S.A. 44:10-2. Plaintiffs herein are recipients of welfare benefits under the AFDC program and brought suit as a class for a declaratory judgment holding invalid certain procedures followed by the Board in the administration of the program. The challenged procedures applied only to recipients of aid under the program who were also obligees under judicial support orders against legally responsible relatives  most often, deserting fathers. In general, such court orders were based upon nonsupport complaints filed by welfare recipients pursuant to instructions from the Board.
Payments under such orders would be required to be made by the responsible relative either directly to the obligees or through the county probation department. In either case it was the Board's practice in making payments to welfare recipients under the program to deduct, at the beginning of each (monthly) payment period, the full amount of any court-ordered payments of support to become due during that month from the total sum to which the welfare recipient would otherwise be entitled. Thereafter, if the support payment or any part thereof failed to come through or became in default, upon proof to that effect a supplemental assistance check would be issued to make up the difference.
The court below found that in this process the length of time between the start of a payment period and receipt of a supplementary support payment varied from case to case, depending upon at what point in time the welfare client's economic deprivation became so acute as to compel action. It further found that delays were entailed in attempts to report delinquencies either by telephone or personal visits to burdened caseworkers, who were not always available and whose efforts to return such calls were at times frustrated by the recipient's lack of telephone service. Further, after the report was received, time-consuming verifying procedures were required to be completed by the Board before payment would be authorized. It found that the cumulative *545 effect of these various delays was that three or four weeks could sometimes pass before the needed supplemental assistance check was issued. Exemption from the foregoing delays required that the court-ordered payments be found to be "habitually" delinquent, in which case the welfare client would be placed on the "full payment process" and would thereafter receive the full grant at the beginning of each payment period. Here plaintiffs' challenge is directed to the standards utilized by the Board in determining when a welfare recipient was to be placed on "full payment."
Under the Board's standard, delinquencies were deemed "habitual" where (1) payments had been delinquent in whole or in substantial part for three consecutive months, or (2) payments had been delinquent in whole or substantial part in eight of the preceding 12 months, or (3) supplemental assistance checks had been issued by reason of substantial delinquencies for four of the preceding six months. Plaintiffs maintained below that they should be allowed the full amount of their welfare grant at the beginning of each month, without deduction of the amount ordered to be paid for support by the legally responsible relatives. The Board contended that the withholding practice was lawful and not inconsistent with local and congressional intent as expressed in state and federal legislation and administrative regulations promulgated thereunder.
The class selected for welfare assistance under the AFDC program is "the dependent child," as defined in 42 U.S.C.A. § 606(a). The program is financed largely by the Federal Government on a matching fund basis and is administered by the states. King v. Smith, 392 U.S. 309, 316, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968). States desirous of taking part in the program are required to submit an AFDC plan for the approval of the Secretary of Health, Education and Welfare. Id. The state plan must conform with several requirements of the Social Security Act and with rules and regulations promulgated by the Secretary of Health, Education and Welfare. Id. at 317, 88 *546 S.Ct. 2128; 42 U.S.C.A. § 602. One of the statutory requirements is that "aid to families with dependent children * * * shall be furnished with reasonable promptness to all eligible individuals." 42 U.S.C.A. § 602(a)(10); (emphasis added.) See also N.J.S.A. 44:10-3(b).
Each state is permitted considerable latitude in determining its own standard of need as a condition for eligibility under the program. King v. Smith, supra, 392 U.S. at 318, 88 S.Ct. at 2128. New Jersey, by administrative regulations promulgated under N.J.S.A. 44:10-1(c)(3), fixes the standard for an adequate minimal level of living as "a money amount which is sufficient to finance the purchase of those goods and services which are essential for physical health and safety." Categorical Assistance Budget Manual § 102 (the Budget Manual). Thus the condition of eligibility is that the applicant be "destitute, without funds or assets." Goldberg v. Kelly, 397 U.S. 254, 261, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).
In determining the amount of benefits to be paid to the welfare applicant under the program, the Budget Manual, prepared by the Division of Welfare, Department of Institutions and Agencies, is used by the Board's caseworkers. Section 402.61 thereof provides that consideration is to be given to resources to be derived by the applicant from relatives and friends in determining the extent of need and assistance required. However, § 501.3 directs that "only the amount of support * * * actually being received by the client shall be considered as an available resource."
In administering the foregoing, and kindred regulations contained in the Federal Handbook of Public Assistance Administration (see 42 U.S.C.A. § 1302) and the Manual of Administration prepared by the Bureau of Assistance of the Department of Institutions and Agencies, the Board has been applying the formula hereinabove referred to. It is defended on the ground that it is in conformity with § 2320.2(b) of the Manual of Administration which provides:
*547 A report that the relative has failed to comply with the Court Order shall be investigated by the county welfare board without delay. If substantiated, the following policy and procedures shall be observed.

* * * * * * * *
When there is evidence that a relative is habitually making irregular payments, or payments in amounts less than ordered, the county welfare board shall:
1) As of the first day of the next regular payment period adjust the grant to correct any current deflcit by the irregular or insufficient payment of the Order; and
2) Immediately offer the client the opportunity to have the regular continuing grant adjusted to provide the full amount of assistance (to which the client is entitled without regard to the Order of Support) under an arrangement whereby any support payments thereafter, if received directly by the client, will be forwarded to the county welfare board, or, if paid through the Probation Department, will be handled as follows: * * *.
The Board concedes that § 2954.3(a) of the same manual permits it to make a full assistance grant where support payments ordered to be made to the Probation Department are assigned to the Board. It contended below that the Essex County Juvenile and Domestic Relations Court, in which many such support orders were entered, had not in the past substituted it as beneficiary of such orders in a sufficient number of cases to permit it to pay full benefits as a matter of policy.
The court below found that the challenged practice contravened governing policies, forcing recipients under the AFDC program to go month after month waiting for support payments which might never arrive, and then to make frantic applications for supplemental assistance as household funds dwindled. It found that the practice violated the applicable regulatory requirement that the Board, rather than the welfare recipient, be made to bear the burden of investigating the support obligors' willingness (ability) to make payment. It noted that the procedure followed had been twice cited as an irregularity by the State Director of Public Welfare.
*548 Having thus struck down the test being applied by the Board, the court proceeded to enact its own test to the effect that the nonavailability of support payments as an actual resource in calculating benefits due was to be satisfactorily established upon the occurrence of a single default thereunder during any one payment period  specifically, that recipients were to be placed on a "full payment" basis when support order payments became delinquent five days in any one payment period.
We are in accord with the conclusion of the court below that the challenged procedures contravened governing policies and violated regulatory requirements, and thus should not be permitted to stand. However, upon the court's determination that the challenged regulations and procedures of the Board did not pass legal muster, an order setting them aside should have been entered, with a proviso affording the Board a reasonable time in which to enact new regulations and procedures which would meet the deficiencies pointed out by the court. Courts are not free to enact their own version of ordinances or regulations, the enactment of which are committed by law to municipal bodies or agencies. The function of the court is, essentially, to pass upon the legality of the challenged regulation and, in the event of illegality, to point out its deficiencies. Where, for example, an ordinance, or a regulation of a local board of health is set aside, the court does not substitute a new one of its own. The enactment of substitute legislation should be left to the legislative discretion of the municipal body or agency which is charged by law with that duty and presumably possesses expertise in the field.
At the conclusion of the oral argument the court expressed concern in the foregoing regard and inquired as to whether, since the entry of judgment below, the Board had considered a revision of its procedures to bring them more into conformity with the legislative intent and the implementing Federal and State rules and regulations. Thereafter, on October 27, 1971, defendant submitted to the court and the *549 plaintiffs a proposed revised "delinquent court order procedure" which provided, in pertinent part, as follows:

Definitions:
Delinquency is defined as a situation in which the payer fails to make a payment, or makes a payment in an amount less than that ordered, or fails to make the payment by the time specified in the Court Order.
Habitual delinquency is defined as meeting one of the following conditions:
1. Court ordered payments are delinquent, as defined above, for three continuous weeks.
2. There is an aggregate delinquency in four of eight continuous weeks.

Procedures:
For the single or occasional delinquency, the caseworker shall prepare the order for an additional grant within 24-48 hours of notification by client. Check will be issued to be received by client promptly but in no event more than five working days of notification.
For habitual delinquency, as defined above, the Welfare Board will invoke the "full-payment process" under which the Welfare Board makes a regular monthly payment to the client for full needs, while Court Ordered payments are made through the Probation Department to the Welfare Board.
To institute this procedure, the Welfare Board requests client to execute an "Authorization to Remit Support Payments to County Welfare Board", copy of which is appended.
We note that a memorandum of the Administrative Director of the Courts, dated April 21, 1967 and addressed to judges of the Juvenile and Domestic Relations Court and chief probation officers, after pointing out the difficulty entailed in gearing welfare payments to support orders, suggested that:
One way in which the situation can be met is to have the probation departments forward support payments directly to the welfare agency under a waiver executed by the beneficiary. Under this plan the assistance grant can be made and maintained according to the determined needs of the family and the monies received under the court order are treated as a refund of assistance paid.
There seems to be no legal barrier to the adoption of this system in New Jersey since an assignment can be made under N.J.S.A. 44:10-4(a) authorizing the payment of collections of support orders directly from a probation department to a county welfare board. A sample form for such an assignment is attached herewith.
*550 You may be interested to know that the plan outlined above is recommended by the Bureau of Family Services of the Welfare Administration, United States Department of Health, Education and Welfare. Effective July 1, 1967, the Federal agency is requiring that the public assistance program guarantee regular payment of full budget allowances to beneficiary families without diminution based on a presumption that court-ordered support will be available.
A form authorizing the remittance of support payments to county welfare boards was promulgated for use in such cases and is the one referred to in the proposed revision. On April 9, 1968 a supplemental memorandum from the Administrative Director to chief probation officers directed that the procedure above referred to be applied to payments of alimony and support ordered in the Chancery Division.
While ordinarily we would not pass upon the proposed new procedures in advance of their enactment, we have concluded, in view of the public interest involved, the nature and purpose of the action and the long time which has intervened since its institution, that we should do so here. With this end in view, counsel for plaintiffs was invited to submit a letter memorandum directed to the proposed new procedure. He did so on November 9, 1971. The Board filed an answering memorandum on November 17, and plaintiffs' counsel filed a reply memorandum on December 2.
Upon consideration of the memoranda filed we are of the opinion that the proposed definition of delinquency as a situation in which the obligor under a court order fails to make a payment, makes a payment less than the amount specified in the order, or fails to make the payment by the time specified in the order, is consistent with and reasonably conforms to the aims and objectives of the AFDC program and of the statutes and regulations, both federal and state, pertaining thereto. We reach the same conclusion with reference to the definition of habitual delinquency as embracing situations when (1) court order payments are delinquent (as defined above) for three continuous weeks, or (2) where there is an aggregate delinquency in four of eight continuous weeks. We hold likewise as to the procedures *551 which would provide that (1) in the case of a single or occasional delinquency the caseworker shall prepare the order for an additional grant within 24 to 48 hours of notification by the client, and that the check in payment thereof be issued so as to be received by the client promptly, and in no event more than five working days after notification, and (2) in a case where habitual delinquency as defined above is established, payees shall be entitled to be placed upon a "full payment" basis promptly, payments under the full payment process to begin by the next regular (monthly) payment day. The foregoing shall apply whether the order for payment of support has been entered in the Juvenile and Domestic Relations Court or in the Chancery Division, and whether payments under the court order have been required to be made to the probation department (as appears to be the situation in most cases) or directly to the welfare client. In connection therewith the welfare client shall, upon request by the Board, execute an "authorization to remit support payments to the Board" in a form substantially similar to that annexed to the proposed revision.
The conclusions of the Law Division, implicit in the judgment below, which hold that the challenged practices and procedures of the Board contravene governing policies and violate regulatory requirements, are affirmed. So much of said judgment as purports to set up practices and procedures to be followed by the Board, specifically the provision requiring welfare recipients to be placed on a full-payment basis once a payment under a support order becomes delinquent in any one payment period, is reversed and set aside. The Board should be allowed a period of 45 days during which to enact such revisions of its procedures as it deems necessary.
Reversed and remanded for further proceedings in accordance with this opinion. We do not retain jurisdiction.
No costs.