196 N.J. Super. 405 (1984)
483 A.2d 212
SIEGLINDE EHERENSTORFER, PETITIONER-APPELLANT,
v.
DIVISION OF PUBLIC WELFARE, DEPARTMENT OF HUMAN SERVICES OF THE STATE OF NEW JERSEY AND BERGEN COUNTY WELFARE BOARD, RESPONDENTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued September 18, 1984.
Decided October 12, 1984.
*406 Before Judges MICHELS and PETRELLA.
Richard S. Semel argued the cause for appellant (Bergen County Legal Services, attorneys).
Dennis J. Conklin, Deputy Attorney General, argued the cause for respondent Division of Public Welfare, Department of Human Services (Irwin I. Kimmelman, Attorney General of New Jersey, attorney; James J. Ciancia, Assistant Attorney General, of counsel).
No brief was filed on behalf of respondent Bergen County Welfare Board.
The opinion of the court was delivered by PETRELLA, J.A.D.
After this court voided certain regulations of the Division of Public Welfare in the unreported decision of Melendez v. New Jersey Department of Human Services, A-628-81, decided November 12, 1982, the petitioner Sieglinde Eherenstorfer sought to have her eligibility recalculated. When the agency refused to do so, a fair hearing was conducted before an Administrative Law Judge (ALJ) who concluded that petitioner was entitled to a recalculation. Although the Acting Director *407 of the Division of Public Welfare in her final decision adopted the ALJ's determination, recalculation was denied for any period of assistance preceding the date of petitioner's request for a fair hearing. Petitioner appeals contending that she was entitled to have her eligibility recalculated from the payment period immediately after this court's decision. We agree and reverse and remand.
The facts are not complicated. On June 13, 1983, after becoming aware of the Melendez case (which had not been submitted for publication) Eherenstorfer wrote to the Bergen County Welfare Board (County Board) requesting that it recalculate her income and adjust her assistance payments from the Aid to Families with Dependent Children (AFDC) program. Relying on our decision in Melendez, she challenged the manner in which the County Board calculated and treated her income from the rental of rooms in her home as unearned income.
Petitioner's request for recalculation was denied on the basis that her income had been determined in accordance with the prevailing regulations, N.J.A.C. 10:82-4.10 and -4.12, notwithstanding the fact they were the very regulations previously invalidated by this court in Melendez. Petitioner requested a fair hearing on June 21, 1983.
A hearing was conducted by an ALJ on August 9, 1983 to determine the correctness of the action of the County Board in budgeting rental income from real property as unearned income. There was no testimony taken and only legal arguments were presented. The ALJ concluded in an August 24, 1983 initial decision that "the agency action in budgeting the petitioner's rental income as unearned income, without the modifications required by the holding in Melendez, was incorrect." He pointed out that in Melendez N.J.A.C. 10:82-4.10 and 10:82-4.12(a)(1) were considered violative of the federal statutes and regulations insofar as the New Jersey provisions treated rental income as unearned income and set the monthly cost figure for the operation and maintenance of a rental unit. The ALJ *408 ordered that the petitioner's assistance budget be recomputed so as to comply with the standards set forth in Melendez.
The County Board filed an exception[1] to the ALJ's initial decision and argued that it could not comply because the regulations which were found void in Melendez were still in effect and that its actions were governed by these regulations and the directives of the Division of Public Welfare (Division).
The Acting Director of the Division concluded in her September 26, 1983 final decision that Melendez, although in her view not dispositive, was persuasive and that steps were being taken[2] to amend the regulations to conform with the holding in Melendez. Accordingly, she directed the County Board "to recompute the amount of grant entitlement to which the eligible unit is entitled.... Entitlement to a corrective payment will be retroactive to July 1, 1983, the payment period following the filing of the request for a fair hearing." In response to the petitioner's objection to this directive and the argument that recalculation should be made to the date of the Melendez decision, or at the very latest the date that petitioner requested her grant be recalculated, the Acting Director said in an October *409 19, 1983 letter that she did not find the holding in Melendez "dispositive of the matter at issue." This appeal followed.
Even if the Acting Director disagreed with Melendez, that decision was dispositive of the validity of the regulation challenged therein. Because the Acting Director nevertheless found Melendez "persuasive," we cannot be sure of the extent of the disagreement. However, that does not alter the binding effect of Melendez. In Melendez the petitioner resided with her two minor children in one apartment of a four-family house owned by her. At the time the maximum grant for a family of three was $360 per month. There the Passaic County Board of Social Services notified petitioner she would initially receive $45 for the month of January 1981 and $15 per month thereafter.
In Melendez we held that New Jersey's practice of treating all rental income as unearned income, reduced only by the standardized deductions, impermissibly controvenes federal statutes and regulations. We remanded to determine whether Melendez's claimed expenses were "reasonably attributable to the earning of property income." Melendez dealt with the manner in which rental income received by AFDC recipients was classified when determining the available monthly resources of an eligible unit. Our determination that rental income shall be treated as earned income rather than unearned income was important because the manner in which such income is classified can substantially affect the determination of an eligible unit's needs. Prior to Melendez, N.J.A.C. 10:82-4.10 and 4.12 had treated all rental income as unearned income with recipients given a standardized deduction designed to offset the cost of maintenance and operation of the rental unit. Claims for expenses in excess of those deductions were not allowed. We said in deciding Melendez:
The issue in contention before the Administrative Law Judge was the validity of N.J.A.C. 10:82-4.10 which provides that rental income is unearned income and N.J.A.C. 10:82-4.12(a)(1) which sets the monthly cost figure for the operation and maintenance of a rental unit at $29 per month per rented room when heat is provided. Petitioner claims that this latter regulation is patently unfair in view of her mortgage payments of $521 per month as well as other expenses. *410 The Administrative Law Judge found these regulations to be violative of the following federal statute and regulations: 42 U.S.C. 602(a)(7), which required that the state must take into consideration "any expenses reasonably attributable to the earning of .. . income ...," and 45 C.F.R. 233.20(A)(6)(iii) through (viii). It was specifically provided in 45 C.F.R. 233.20(A)(6)(vii):
With regard to the degree of activity, earned income is income produced as a result of the performance of services by a recipient; in other words, income which the individual earns by his own efforts, including managerial responsibilities, would be properly classified as earned income, such as management of capital investment in real estate. Conversely, for example, in the instance of capital investment wherein the individual carries no specific responsibility, such as where rental properties are in the hands of rental agencies and the check is forwarded to the recipient, the income would not be classified as earned income.
The Administrative Law Judge reversed the action of the County Board. The Director of the N.J. Division of Public Welfare in turn rejected the conclusion of the Administrative Law Judge and found that the AFDC payment was correctly determined by the County Board. This is an appeal from the Director's determination. We reverse and remand.
The principal thrust of the argument in the brief submitted on behalf of respondents is that income generated from an investment in property, "... in connection with which few significant managerial functions were performed by its owner..." should be treated as unearned income for the purpose of computing AFDC benefits. Respondents concede that the State's regulation "... may perhaps be overbroad in treating all rental income ... as unearned income absent consideration of the individual recipient's `degree of activity' in the management of the rental property." Significantly, however, respondents have been unable to show us any federal statute or regulation which authorizes a concept such as degree of activity to be considered with respect to AFDC entitlements. In fact, 45 C.F.R. 20(A)(6)(vii) quoted above impliedly, if not expressly, rejected such a concept. With regard to food stamps, moreover, a federal regulation has been adopted which requires that an average of 20 hours per week must be devoted to property management before it can be considered as earned income. FSM § 511.2(a) Respondents might better be addressing to responsible federal authorities their suggestion that such a regulation be extended to AFDC. In any event, it is well established that states may not contravene valid federal requirements. Arizona St. Dep't of Pub. W. v. Department of Health, E & W, 449 F.2d 456, 470 (9th Cir.1971), cert. den., 405 U.S. 919 (1972), 30 L.Ed.2d 789, 92 S.Ct. 945. Finally, we note that if the property management efforts of petitioner were as inconsequential as respondents believe them to have been, they would result in only corresponding inconsequential amounts being deducted from total gross income to determine AFDC benefits.
The Division argues that we should not consider the retroactivity of Melendez because petitioner never asked for retroactive relief. The argument is that on this appeal petitioner asks *411 for "an extension of relief neither demanded nor mentioned below," citing N.J.A.C. 1:1-16.4 which authorizes a party to file exceptions to the ALJ's opinion.
Retroactivity is not what is really in issue. We are not asked to determine whether the Division must recalculate the eligibility of all AFDC recipients having rental income from a date before our decision in Melendez or from when it initially treated rental income as unearned income. What we are asked to determine is when the Division was required to comply with a decision of this court that certain State regulations are invalid as contrary to federal regulations.
Moreover, the date from which recalculation should be made was not an issue until the Acting Director told the County Board to use the month following petitioner's June 21, 1983 request for a fair hearing. Petitioner promptly objected to that directive. We consider the issue as not only having been presented below, but also a significant one of policy which we should address. Petitioner relied on Melendez and our holding therein in seeking a recalculation of her benefits. New Jersey's federal funding for its AFDC program is contingent upon conformity with federal requirements. Administration of the Division's program in violation of those requirements concern matters of public interest which warrant our consideration.
The real issue is the effect and application of this court's decision in Melendez. Clearly the Director was mistaken in her conclusion that Melendez was not binding upon the Division. It was a party in that case and the regulations of the agency involved herein were directly in issue. The mere fortuity of our decision not to recommend publication of Melendez, in part on the expectation that the Division would promptly comply with federal law, should not allow undue delay before the Division acts.
The Division points out that it could not have acted more expeditiously without violating the APA. Petitioner argues that the Division has moved in the past with considerably more *412 speed in implementing more restrictive requirements issued from the federal government. The Division has previously used "Circular Letters" to promptly inform local agencies of changes. The petitioner argues that instead of doing this, "the Division apparently decided to impose upon welfare recipients the burden of discovering the existence of the Melendez opinion."
The proposed amendment of N.J.A.C. 10:82-4.10 and 4.12 was published in 15 N.J. Reg. 2019(a) (December 5, 1983). The regulations were adopted on April 25, 1984 and are published at 16 N.J. Reg. 1272(a). It thus took some 17 months after the November 12, 1982 decision in Melendez for the regulations to be amended. The Division may have been able to take emergency[3] action pursuant to N.J.S.A. 52:14B-4(c), as implemented by N.J.A.C. 1:30-4.4, because its regulations had been voided and because of the public interests involved. The delay in proposing the regulation appears inordinate. The Division has at times enacted regulations even without emergency action and has done so in periods of less than two months. See, e.g. rules adopted in 16 N.J. Reg. 2434(a) through 2442(a).
There can be no doubt that it is a function of this court "to pass upon the legality of ... challenged regulation[s]." Buchanan v. Essex County Welfare Bd., 117 N.J. Super. 541, 548 (App.Div. 1971). While it is true that R. 1:36-3 does state that "[n]o unpublished opinion shall constitute precedent or be binding upon any court," this rule does not indicate that a party to the litigation is not bound by it. See Roberts v. Goldner, 79 N.J. 82 (1979); New Jersey Mfrs. Ins. Co. v. Brower, 161 N.J. Super. 293, 298-299 (App.Div. 1978). A party does not have the right to avoid a legal determination made by this court merely because a decision is unpublished. There can be no *413 doubt that "any regulation which contravenes a statute is of no force." Terry v. Harris, 175 N.J. Super. 482, 496 (Law Div. 1980), citing Kamienski v. Mortuary Science Bd., 80 N.J. Super. 366 (App.Div. 1963). There is no reason that the Acting Director should not have considered our determination in Melendez fully binding on her and the Division. There was never even a petition for certification to the Supreme Court following Melendez. Hence, in the absence of a valid state regulation, the Division was required to apply the federal regulations which mandated a recalculation of petitioner's eligibility.
The Division relies on Buchanan, supra, 117 N.J. Super. at 548, in arguing that it was entitled to a reasonable time to cure defects in its regulations. We do not dispute that ordinarily the Division should have a reasonable time to amend its regulations. Here, it took the Division approximately 13 months to propose an amendment to change the prior regulations and another four months to adopt that proposal. We need not determine the reasonableness of that time period. Buchanan is distinguishable, but even if it were applicable, it is of little consequence here. That case concerned the manner of payment of benefits and when the recipient would receive his full grant because of problems which existed in determining the appropriate adjustments to be made for the receipt of court-ordered support. Id. 117 N.J. Super. at 544-545. It did not deal with standards for determining eligibility. Melendez voided regulations pertaining to eligibility, a fundamental factor inherent in the requirement that conformity exist in AFDC administration throughout the states. Even if we concluded that respondent was entitled to a reasonable time to implement its own version of the federal regulations, and that 17 months to accomplish this was a "reasonable time," the Division could not continue to operate under void regulations.
We reject the argument in the brief on behalf of the Division that the decision in Melendez could not be self-executing. Although this court recognizes the responsibility for legislative or quasi-legislative action in the appropriate agency *414 or body, it is clear that void regulations are of no effect. We think it is also clear that where the only issue is the compliance with the federal statute, this State must conform its AFDC program to federal statutes and regulations. Shea v. Vialpando, 416 U.S. 251, 253, 94 S.Ct. 1746, 1750, 40 L.Ed.2d 120, 125 (1974); Essex County Welfare Bd. v. Dept. of Institutions & Agencies, 139 N.J. Super. 47, 50 (App.Div. 1976).
If a state AFDC regulation conflicts with a federal standard, that regulation is invalid under the supremacy clause. Carleson v. Remillard, 406 U.S. 598, 600-603, 92 S.Ct. 1932, 1934-1935, 32 L.Ed.2d 352 (1972). Thus, if New Jersey disagrees with the manner in which the federal authorities have presented eligibility criteria for AFDC, and the application of those standards, its argument must be taken to those responsible for the federal legislative and regulatory scheme. It is not free to apply a valid federal regulation in a manner which it may think is more appropriate. See King v. Smith, 392 U.S. 309, 316, 88 S.Ct. 2128, 2133, 20 L.Ed.2d 1118, 1125 (1968) (states not required to participate in AFDC program but those that elect to take advantage of federal funds must submit a plan for approval of the Secretary of HEW).
We discern no justification for the undue delay by the Division in promulgating an amendment to its voided regulations and the apparent determination by the Division to ignore the determination of this court. Thus, we must consider the period for which respondent must recalculate petitioner's benefits.
There is no doubt that in determining eligibility, New Jersey must comply with the federal regulatory scheme. See, e.g., Carleson, supra, 406 U.S. at 600-603, 92 S.Ct. at 1934-1935. Hence, no vacuum existed following the voiding of the regulation by our decision in Melendez because the controlling federal statutes and regulations provided the mechanism for the Division to act. Compliance under those circumstances with the APA provisions was, in a sense, a matter more of form than substance because the procedures of the APA cannot suspend the requirements of the federal regulatory scheme.
*415 Under 42 U.S.C. § 602(a)(14) and N.J.A.C. 10:90-1, et seq., a recipient's eligibility to continue receiving AFDC benefits is determined on a monthly basis with certain exceptions not pertinent here. All income available to the recipient in that month, unless otherwise excluded, must be considered available to meet the recipient's current needs. 42 U.S.C. § 602(a)(17). It is the duty of the State under federal law to make eligibility determinations monthly, and to promptly adjust grants to reflect the recipient's available resources and current needs. 42 U.S.C. § 602(a)(14)(A) and (B). We concluded in Melendez that New Jersey's treatment of rental income as unearned, rather than earned income, violated federal standards. Respondent was thus required to redetermine petitioner's eligibility in the month following the Melendez decision not only in compliance with our decision, but also in compliance with the federal statutes and regulations. The Division was without authority to apply voided regulations which are of no force. Terry, supra, 175 N.J. Super. at 496.
Recipients are entitled to have eligibility determined uniformly throughout the states. As of the date of our decision in Melendez, which decision was not appealed, there was a binding determination which established that New Jersey AFDC recipients with rental income were being denied this uniformity. We, therefore, conclude that the Division and the Board should have recalculated petitioner's eligibility from the date of the decision in Melendez. Were that result otherwise, then a void regulation would be enforceable until the agency decided to amend its rules and procedures. In effect this would give the State the opportunity in that interim to violate the supremacy clause with respect to duly promulgated federal regulations.
The Division is required by the regulations to "promptly correct any underpayments to current AFDC recipients." N.J.A.C. 10:90-4.8(b)(1). Such payments must be retroactive "to the date the incorrect action was taken." N.J.A.C. 10:82-2.19(b)2. We are unimpressed with the Division's argument that *416 because N.J.A.C. 10:82-2.19(b)(2) limits payments "to the `date the incorrect action was taken'" and that its "incorrect action" was the refusal to recalculate petitioner's eligibility pursuant to the requirements of Melendez, the correct payment date was the date of its refusal to calculate petitioner's eligibility pursuant to Melendez. We disagree with the Acting Director's interpretation of what constituted the "incorrect action," because such action actually occurred initially when respondent first recalculated petitioner's eligibility pursuant to the federally mandated monthly reporting requirement subsequent to this court's decision in Melendez. The failure to do so violated federal standards and constituted an incorrect action. Because petitioner's eligibility was incorrectly determined, she received less than she was entitled to under N.J.A.C. 10:90-4.8(b).
The determination of the Acting Director is reversed and the matter is remanded for recalculation of benefits from the payment period following our determination in Melendez.
NOTES
[1] In its September 13, 1983 letter of exception the County Board said:

We have reviewed the above-captioned Initial Decision on Fair Hearing. We must disagree with the recommendation of the [ALJ]. The above-captioned client has income from real property which she rents. We have budgeted this income as unearned income based on ASH 10:82-4.10 and 10:82-4.12. The [ALJ] has ruled that these regulations are no longer in force. They are superseded by an unpublished Appellate Court Decision. The Bergen County Board of Social Services is governed by official regulations promulgated by the New Jersey Division of Public Welfare in the Assistance Standards Handbook, the Public Assistance Manual and Circular Letters. Our budgeting in this case is correct based on the above-mentioned regulations and our decision, budgeting should be affirmed. Since the [ALJ] should base his decision on the regulations which we are required to work with, we must take the position that his decision is incorrect.
[2] New regulations were not proposed until December 5, 1983. They were adopted April 25, 1984. 16 N.J.Register 1272(a). See infra at 9.
[3] Compare the action taken by the Division regarding the food stamp program in 15 N.J. Reg. 1774(a). Another example of an emergency adoption appears at 16 N.J. Reg. 2456(a) (creating rules for the establishment of procedures and guidelines for counties and municipalities to follow in the receipt of aid pursuant to the 1984 Trust Fund Authority Act).