221 N.J. Super. 381 (1987)
534 A.2d 741
DANIEL H. RAYMOND, PLAINTIFF-APPELLANT,
v.
THE NEW JERSEY STATE PAROLE BOARD, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted October 14, 1987.
Decided December 8, 1987.
*382 Before Judges ANTELL, DEIGHAN and LANDAU.
Daniel H. Raymond, submitted a brief pro se.
W. Cary Edwards, Attorney General, attorney (Michael R. Clancy, Deputy Attorney General, of counsel; Stuart J. Lieberman, Deputy Attorney General, on the brief).
The opinion of the court was delivered by LANDAU, J.A.D.
Since enactment of the Parole Act of 1979 (N.J.S.A. 30:4-123.45), the New Jersey Parole Board has uniformly interpreted the act as permitting it to decline to enter into any parole agreements. *383 It has, therefore, never implemented by regulation a parole agreement program as authorized by section 23 (N.J.S.A. 30:4-123.67) of that act.
Daniel Raymond, who is now serving a life sentence for murder, has sought unsuccessfully to gain early parole through such an agreement, and also by means of the "exceptional progress" early release provisions of section 8 of the act. (N.J.S.A. 30:4-123.52)
Raymond appeals the denial of each of those applications, asserting:
I. THE FAILURE OF THE NEW JERSEY STATE PAROLE BOARD TO PROMULGATE STANDARDS FOR N.J.S.A. 30:4-123.67 IS A VIOLATION OF DUE PROCESS OF LAW.
II. THE NEW JERSEY STATE PAROLE BOARD'S ENACTMENT OF N.J.A.C. 10A:71-3.5 VIOLATES THE LEGISLATIVE INTENT OF N.J.S.A. 30:4-123.52.
We disagree and affirm.

N.J.S.A. 30:4-123.67
Section 23 of the Parole Act (N.J.S.A. 30:4-123.67 provides:
a. The appropriate board panel and the Department of Corrections may enter into formal agreements with officials of the board, officials of the Department of Corrections and individual parolee or inmates reduced to writing and signed by all parties, which agreements stipulate individual programs of education, training, or other activity which shall result in a specified reduction of the parolee's parole term pursuant to section 22 of this act or the inmate's primary parole eligibility date pursuant to section 8 of this act, upon such successful completion of the program.
b. Any parolee or inmate shall be permitted to apply to the board for such an agreement. The board panel shall review all such applications and may approve any application consistent with eligibility requirements promulgated by the board pursuant to section 4 of this act.
c. Upon approval of the parolee or inmate's application, the board panel shall be responsible for specifying the components necessary for any such agreement. Upon acceptance of the agreement by the Department of Corrections, by the board panel and by the parolee or the inmate, the board panel shall reduce the agreement to writing. The parolee or inmate and the Department of Corrections shall be given a copy of any such agreement.
d. Any such agreement shall be terminated by the board panel in the event the parolee or inmate fails or refuses to satisfactorily complete each component of the agreement. The inmate or parolee shall be notified in writing of any *384 such termination and the reasons therefor. Any such termination may be appealed to the full board pursuant to section 14 of this act.
Essentially, Raymond urges us to consider first paragraph b of section 23 and to give paramount effect to the language, "... shall be permitted to apply to the Board for such an agreement ..." independently of the preceding statutory language of section 23a. It is paragraph a, however, which creates the authorization for, and defines the subject matter of, the formal agreements referred to in paragraph b with the phrase, "... such an agreement ..." The language of paragraph a is indisputably permissive, granting through use of the word "may" discretion to the Board and the Department of Corrections whether to enter into formal parole agreements in a general sense. Significantly, discretionary language was placed in the provision which provides authorization for a contract parole program. It is, therefore, most consistent with the probable legislative intent that paragraph b is designed to make it clear that, if such contract parole program is implemented, all parolees and inmates shall be permitted to apply subject to a uniform system of regulations which set forth the eligibility criteria.
Our interpretation is consistent with the administrative interpretation afforded to section 23 since adoption of the Parole Act. Moreover, we have reviewed the legislative history of Chapter 441 of the Laws of 1979, and the substantial statements appended to the Assembly Bill. It is noteworthy that there was no mention of a legislative purpose to enact a mandatory contract parole scheme, although such a departure from the existing practice would have constituted a major legislative change. Finally, we note, not by way of stare decisis reliance (see R. 1:36-3)[1] but because the Parole Board, *385 as a party, is bound by the holdings, that this interpretation of section 23 accords with our recent unpublished opinions in Davis v. N.J. State Parole Board and Martin and Doss v. N.J. State Parole Board (Dockets A-1068-85T6 and A-919-86T6) decided September 2, 1987. Interestingly, the Davis complaint was entitled, "Alfonso Ray Davis, and all others similarly situated."

N.J.S.A. 30:4-123.52b.
N.J.S.A. 30:4-123.52b. provides:
b. If the appropriate board panel determines that an adult inmate has made exceptional progress, as evidenced by documented participation and progress in institutional or community educational, training or other programs, the inmate's parole eligibility date may be decreased, except that no parole eligibility date shall be set below the primary parole eligibility date without the consent of the sentencing court, which need not conduct a hearing and in no case shall a parole eligibility date be set below any judicial or statutory mandatory minimum term, including any parole eligibility date set pursuant to section 23 of this act.
Pursuant to authority contained in N.J.S.A. 30:4-123.48d., the Parole Board adopted N.J.A.C. 10A:71-3.5, which provides in pertinent part:
(a) The appropriate Board panel will consider requests for exceptional progress eligibility term reductions from adult inmates if the following requirements are met:
1. The inmate has demonstrated exceptional progress in appropriate institutional or community programs; and
2. The inmate is not serving a mandatory minimum term; and
3. Unless otherwise authorized by the panel for good cause, the inmate has served at least two years in a State correctional facility, is within two and one-half years of parole eligibility, and has not received any institutional infractions within the last two years.
Raymond argues that N.J.A.C. 10A:71-3.5a improperly restricts section 8 of the Parole Act which contains no specific provision limiting its application to those who are within two and one-half years of normal parole eligibility. We note, however, that, as with the parole agreement section of the Parole *386 Act, the Legislature has committed the grant of exceptional progress reductions to the Board's discretion, by its careful use of the word "may" in section 8b.
The challenged regulation does not subvert the intent of the Legislature to afford such discretion. It is entitled to a presumption of validity. New Jersey Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 561 (1978). The regulation announces in a uniform way to all prospective applicants that the Board will ordinarily not exercise its discretion to grant an application for exceptional progress release unless the inmate is within two and one-half years of primary parole eligibility. Under the statute, even if an adult inmate has made exceptional progress, the Legislature places reliance on the expertise of the Board both for that threshold determination and for the further determination whether to shorten the primary parole eligibility date. Were there no regulation such as N.J.A.C. 10A:71-3.5a, we would not deem it an abuse of discretion for the Board to conclude that despite making exceptional progress, an inmate should not be considered for release until within the two and one-half year eligibility span. Taking into account all of the purposes of incarceration, this is not an inappropriate or invalid reason to decline accelerated parole. In consequence, we do not view as invalid promulgation of a regulation which announces the policy. See, e.g., New Jersey Guild, supra.
Moreover, notwithstanding Raymond's fine record of institutional and educational achievement, from which he has already derived and will continue to derive personal benefit, it was not an abuse of discretion for the Board to determine that good cause for waiver of the eligibility criteria had not been demonstrated because his "level of participation has not been so extraordinary that a waiver of the criteria is warranted."
The regulation is presumptively valid, and not unreasonable on its face. Raymond has not sustained his burden to overcome the presumption of validity. See Bergen Pines Co. Hosp. v. New Jersey Dept. of Human Services, 96 N.J. 456, 477 *387 (1984). As applied, the regulation was not interpreted arbitrarily.
Although our determination respecting each of the questioned rejections has primarily been based upon our interpretation of the applicable statutory sections, we observe that from a constitutional standpoint, there is no inherent right to parole. See, e.g., Greenholtz v. Nebraska Penal Inmates, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). Once granted, however, due process must enter into its revocation. Indeed, once an inmate has been granted a "liberty interest" by the State, due process protections are necessary to insure against its arbitrary abrogation. Vitek v. Jones, 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980); Jenkins v. Fauver, 108 N.J. 239, 247 (1987). But, as observed in Jenkins, at 248, the United States Supreme Court has generally declined to recognize a liberty interest warranting due process protection where the prisoner's status was subject to change by authorities without any proof of misconduct. Here, there has been no taking away of a person's established right or status; only the reflection of general policy determinations as to when, how and if statutory grants of discretionary parole powers shall be exercised. Compare, Tracy v. Salamack, 572 F.2d 393 (2nd Cir.1978).
Affirmed.
NOTES
[1] While an unpublished opinion does not have stare decisis effect, it is nevertheless binding as against a party, in particular a public party whose conduct is thereby prescribed. See Eherenstorfer v. Div. of Public Welfare, 196 N.J. Super. 405 (App.Div. 1984); Pressler Current N.J. Court Rules, Comment R. 1:36-3.